701 A.2d 1311

F. STUART SAYRE, AUSTIN B. SAYRE AND AMERICAN SAFETY TECHNOLOGIES, INC., PLAINTIFFS–RESPONDENTS, v. INSURANCE COMPANY OF NORTH AMERICA, INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA AND WESTPORT INSURANCE COMPANY, DEFENDANTS, AND NEW JERSEY SURPLUS LINES INSURANCE GUARANTY FUND, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 22, 1997—Decided November 6, 1997.

210

Before Judges HAVEY, LANDAU and NEWMAN.

*Mark M. Tallmadge* argued the cause for appellant (*Bressler, Amery & Ross* and *Ronca, McDonald & Hanley*, attorneys; *Keith S. Barbarosh* and *Mr. Tallmadge*, on the brief).

*David A. Thomas* argued the cause for respondents (*Lowenstein, Sandler, Kohl, Fisher & Boylan*, attorneys; *Robert D. Chesler, Catherine E. Bostock* and *Mr. Thomas*, on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

On leave granted, defendant New Jersey Surplus Lines Guaranty Fund (Fund) appeals from a denial of its motion for summary judgment which had been based on recent amendments, effective January 8, 1997, to the New Jersey Surplus Lines Insurance Guaranty Fund Act (Guaranty Fund Act), *N.J.S.A.* 17:22–6.70 to – 6.83. The motion judge applied the liability analysis set out in *Owens–Illinois* [1] for cases in which there is a progressive indivisible injury, and determined that the exhaustion and "set-off" provisions of the amendments did not apply in this case in which a surplus lines insurance company, one of a number of successive insurers, became insolvent. We affirm, substantially for the reasons stated by Judge Kenneth Stein in his oral opinion of May 13, 1997.

Plaintiffs F. Stuart Sayre, Austin B. Sayre and American Safety Technologies, Inc. are the successors-in-interest to American

---

[1] *Owens-Illinois, Inc. v. United Ins. Co.*, 138 *N.J.* 437, 650 *A.*2d 974 (1994).

Abrasive Metals Company (American Abrasive). They sought recovery under insurance policies issued to American Abrasive from 1974 through 1985 for claims arising by reason of environmental contamination and cleanup at its former manufacturing site in Irvington.

During the period between January 1, 1977 and October 28, 1977, American Abrasive was insured under a $300,000 liability policy with State Security Insurance Company (State Security), a surplus lines insurance company. As the result of State Security's insolvency in June 1993, the New Jersey Commissioner of Insurance required the Guaranty Fund to respond to claimants of State Security.

Here, as in *Owens–Illinois*, it is not disputed that there was a progressive environmental injury, lasting a period of years, about which current scientific inquiry is unable to provide precise time determinations as to exposure, damage or progression. As in *Owens–Illinois*, there were successive insurers on the risk during this period.

*Owens–Illinois* involved a suit between the manufacturer of an asbestos product and various successive insurers requesting a declaration of coverage for progressive personal injury and property damage liability. The Court there held that in cases where "progressive indivisible injury or damage results from exposure to injurious conditions for which civil liability may be imposed, courts may reasonably treat the progressive injury or damage as an occurrence within each of the years of a [comprehensive general liability] policy. That is the continuous-trigger theory for activating the insurers' obligation to respond under the policies." *Owens–Illinois, supra*, 138 *N.J.* at 478–79, 650 *A.*2d 974.

The amendments to the Guaranty Fund Act apply to all pending unpaid claims, as well as claims filed after the effective date. *L.* 1996, *c.* 156, § 5. Before making a claim against the Fund, "person[s]" must exhaust their "right[s]" under any other solvent insurance policy against which they have a claim, and any

amount payable by the Fund on a "covered claim" shall be reduced by the amount of recovery from other insurance policies. *N.J.S.A.* 17:22–6.79b.

The Fund asserts that, by reason of this statute, the allocation method used in *Owens–Illinois* should be employed first to exhaust all other insurance coverage provided by the solvent carriers on the risk between 1974 and 1985 before seeking recovery from the Fund, and that any recovery from the Fund must be reduced or "set-off" by the amount recovered from the other insurance carriers. In effect, the Fund says that the *Owens–Illinois* calculations and allocations should be made on a joint and several basis among the remaining solvent insurers when a surplus lines insurer that covered a given calendar period becomes insolvent.

In his oral opinion of May 13, 1997, Judge Stein recognized that the injury involved in this case was of the progressive indivisible type, and subject to application of the "continuous-trigger" theory which treats the progressive injury as an "occurrence within each of the years of a [comprehensive general liability] policy." *Owens–Illinois, supra,* 138 *N.J.* at 478, 650 *A.2d* 974. Once a policy is triggered it precipitates an insurer's duty to act. *Id.* at 478–479, 650 *A.2d* 974.

Judge Stein applied the *Owens–Illinois* method of allocation, taking the time on the risk and the degree of risk assumed into account to determine the extent of damages attributable to each insurance policy, and noted that a fair allocation required application of several, but not joint and several, liability. *Id.* at 473, 479, 650 *A.2d* 974. Thus, the judge concluded that "[a] portion of the indivisible loss occasioned by the plaintiff should be allocated to State Security and now to the Guarantee Fund, again, by the *Owens–Illinois* allocation of the risk on the basis of the time on the risk and the degree of the risk assumed."

We note that, under the *Owens–Illinois* approach, an allocation of loss is also made against the property owner for periods in which no insurance is in effect. *Owens–Illinois, supra,* 138 *N.J.*

at 479, 650 *A.2d* 974. Insurers are not required to contribute with respect to periods in which no policy is in effect.

The thrust of *Owens–Illinois* was to devise a fair method of allocation of the share of loss to be covered in continuous-trigger situations, not to make insurers guarantors of their predecessors or successors on the risk, nor to require them to pay for periods of non-insurance. Thus, Judge Stein correctly held that no other insurer may be assigned liability for the policy period, January 1, 1977 to October 28, 1977, in which State Security's policy was in effect.

As no other coverage duplicates or overlaps State Security's coverage, the Fund is required to pay the share which would have been allocated to the State Security policy, not exceeding the statutory $300,000 limit. *N.J.S.A.* 17:22–6.74a(1).

■■■ The motion judge also concluded that the same reasoning applied to the Guaranty Fund's "set-off" argument. The Fund argues that the language of *N.J.S.A.* 17:22–6.79b, stating that "[a]n amount payable on a covered claim under [the New Jersey Surplus Lines Insurance Guaranty Fund Act] shall be reduced by the amount of recovery under any ... insurance policy," requires that the recovery from the solvent insurers should off-set any recovery available from the Fund. The Fund further argues that it should not have to pay any amount to plaintiffs since they settled with the solvent carriers for an amount far in excess of the statutory $300,000 available from the Fund. We agree with the judge that the "set-off" provisions of the statute apply only to situations in which there is overlapping coverage of a solvent and insolvent insurer during the same period of time.

This approach best conforms with the concerns expressed in *Owens–Illinois* about increasing an insurer's liability beyond what the insurer contracted for, and with its emphasis upon the fairness of several, rather than joint and several liability. While the Court did not expect that its *Owens–Illinois* decision would be the final word on all allocations in the complex environmental liability

insurance field [2], its holding is here apt. Compensating claimants and policyholders of insolvent insurers when there is no other insurance available for the relevant policy period is the reason for creation of the Fund. The stated purpose of the Guaranty Act "is to provide a mechanism for the payment of covered claims under certain insurance policies issued by eligible surplus lines insurers ... and to avoid financial loss to claimants or policyholders because of the insolvency of an eligible, nonadmitted insurer." *N.J.S.A.* 17:22–6.71.

While an insured must exhaust all other applicable coverage available to it, no other coverage is here available for the period insured by State Security. The effect of the Fund's argument in this case is to create a separate statutorily unauthorized "fund" consisting of insurers who were not on the risk during State Security's nine-month period of coverage. We do not conceive that this was the purpose of the *Owens–Illinois* formula.

The inequity of the Fund's arguments becomes more clear if we postulate a scenario in which one insurance carrier that had become insolvent insured American Abrasive, not for nine months, but for nine years of the 1974–1985 period, and several solvent carriers insured only two of those eleven years. Nothing in *Owens–Illinois* suggests that it would be fair or proper to burden the solvent carriers with all eleven years of exposure. Indeed, the *Owens–Illinois* opinion, in an analogous hypothetical, suggests rejection of such an approach. *See Owens–Illinois, supra,* 138 *N.J.* at 473, 650 *A.*2d 974.

Under *N.J.S.A.* 17:22–6.74a(2), the New Jersey Surplus Lines Insurance Guaranty Fund shall "[b]e deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." Identical language governs the New Jersey Property Liability Insurance Guaranty Association where admitted insurers have become insol-

---

2 *Id.* at 474, 650 *A.*2d 974.

vent. *N.J.S.A.* 17:30A–8a(2). We believe that the decision below conforms with these statutory directions.

Affirmed.