708 A.2d 450

POLAROME MANUFACTURING COMPANY, INC., PLAINTIFF–AP-PELLANT, v. COMMERCE & INDUSTRY INSURANCE COMPA-NY, DEFENDANT/THIRD PARTY PLAINTIFF–RESPONDENT, v. HOME INSURANCE COMPANY, THIRD PARTY DEFEN-DANT–RESPONDENT/CROSS–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 27, 1998—Decided April 23, 1998.

Before Judges PRESSLER, WALLACE and CARCHMAN.

*Jeffrey M. Kadish*, argued the cause for appellant Polarome (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski*, attorneys; *Mr. Kadish*, of counsel and on the brief; *Jodi F. Bauer*, on the brief).

*Hardin, Kundla, McKeon, Poletto & Polifroni*, attorneys for cross-appellant Home Insurance Company, join in the brief of appellant Polarome.

*Bruce M. Strikowsky*, argued the cause for third party plaintiff/respondent Commerce (*Lester Schwab Katz & Dwyer*, attor-

neys; *Eric A. Portuguese* and *Mr. Strikowsky*, of counsel and on the brief).

The opinion of the court was delivered by

CARCHMAN, J.S.C. (temporarily assigned).

This is an insurance coverage case the disposition of which is dependent on whether New York or New Jersey law applies. If New York law applies, plaintiff's failure to provide timely notice to the insurer warrants a dismissal of plaintiff's declaratory judgment action seeking coverage. Applying the choice-of-law analysis mandated by the Supreme Court in *State Farm Auto. Ins. Co. v. Estate of Simmons*, 84 *N.J.* 28, 417 *A.*2d 488 (1980), and *The Gilbert Spruance Co. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 134 *N.J.* 96, 629 *A.*2d 885 (1993), we conclude that the State of New York has the dominant and significant relationship with this transaction and the parties, as well as being the situs of the execution of the contract. We, therefore, conclude that the motion judge correctly determined that New York law applied, and we affirm the judgment below dismissing plaintiff's complaint.

Plaintiff Polarome Manufacturing Company, Inc. (Polarome) is a New York corporation that manufactures aromatic and flavoring chemicals and whose principal address is in Jersey City. Polarome entered into an agreement for the disposal of Polarome's steel drums with National Drum & Barrel Corporation (National Drum), a New York corporation principally operating in Brooklyn, New York. Under the arrangement, National Drum would leave a trailer at Polarome's Newark, New Jersey facility which would then be fully loaded by Polarome's employees with empty 55-gallon steel drums for pick-up and disposal by National. On March 31, 1992, Raymond Eckes, who at the time was a New York resident employed by National Drum, picked up a full trailer containing approximately 220 empty steel drums in Newark and brought the trailer back to National Drum's Brooklyn location. After those drums which could be re-used were unloaded, Eckes transported the remaining drums to Connecticut to be sold for

salvage. While unloading those drums in Connecticut, one of the drums rolled out of the trailer and onto Eckes's foot causing severe injury.

At the time of the Eckes incident, Polarome maintained general liability coverage with a personal injury limit of $1,000,000 issued by Home Insurance Company (Home), a New Hampshire company licensed in all states. At that same time, National Drum's automobile insurance policy with Commerce and Industry Insurance Company (CIIC), a New York insurer licensed in all states, provided it with $1,000,000 worth of liability coverage. The CIIC policy issued to National Drum noted that the State of New York was its primary location of risk. That policy's notice provision provided, in part, that "[y]ou or someone on your behalf must promptly notify us or our agent of any accident or loss."

In March 1993, Eckes and his wife filed a complaint against Polarome and others in the Superior Court, Law Division, Hudson County. In May 1993, Polarome filed its answer and separate defenses with Home agreeing to provide a defense for Polarome.

On October 13, 1995, two and one-half years later, Polarome substituted attorneys. Thereafter, on January 3, 1996, counsel for Polarome contacted CIIC for the first time regarding the still pending Eckes case and demanded coverage for Polarome asserting that Polarome was an insured under the terms of National Drum's policy. CIIC denied coverage, and Polarome instituted this declaratory judgment action against CIIC seeking an adjudication of its coverage under the National Drum automobile insurance policy. CIIC answered and claimed that, because New York law applied to the coverage, it was not the primary insurer, and further disclaimed based on late notice. Additionally, CIIC joined Home as a third-party defendant.

Polarome and CIIC cross-moved for summary judgment on the declaratory judgment action. The motion judge granted summary

judgment in favor of CIIC, thereby relieving it from providing a defense or indemnification to Polarome in the underlying Eckes case. Polarome's motion was denied. This appeal followed.[1]

Polarome raises a number of issues on appeal, however, we deem the choice-of-law issue and the failure of National Drum to give appropriate notice, under New York law, to CIIC to be dispositive of this appeal.

We start our analysis with *State Farm Mut. Auto. Ins. Co. v. Estate of Simmons,* 84 *N.J.* 28, 417 *A.*2d 488 (1980), where our Supreme Court adopted the approach advanced in *Restatement (Second) of Conflicts of Law* §§ 6 and 188 (1971) for determining choice of law issues. The Court concluded that in a contract action, the law of the state which has the "most significant relationship" with the transaction would apply. *Id.* at 34–35, 417 *A.*2d 488. In assessing what constitutes a "significant relationship" the Court alluded to seven general considerations implicated in the analysis:

1) the needs of the interstate and international system;

2) the relevant policies of the forum;

3) the relevant policies of other affected states and the relevant interests of those states in the determination of the particular issue;

4) the protection of justified expectations;

5) the basic policies underlying the particular field of law;

6) certainty, predictability, and uniformity of result; and

7) ease in the determination and application of the law to be applied.

[*Id.* at 34, 417 *A.*2d 488 (citing *Restatement (Second) of Conflict of Laws* § 188 (1971)).]

Incorporated within the application of the test is domicile of the parties, place of contracting and place of performance.

---

[1] On April 9, 1997, Eckes and his wife executed a release after receiving $175,000 as a settlement from Polarome. Home filed a notice of cross-appeal, but later withdrew that appeal, instead relying on the brief and argument of Polarome and praying for indemnification if Polarome succeeds. In effect, the result of this appeal determines whether Home or CIIC, or both, are responsible for the payment to Eckes.

*Restatement, supra,* § 188; *State Farm, supra,* 84 *N.J.* at 34–35, 417 *A.*2d 488. In narrowing the issue to a casualty insurance policy, the Court further refined the applicable principles:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and parties, in which event the local law of the other state will be applied.
>
> [*Id.* at 35, 417 *A.*2d 488 (quoting *Restatement, supra,* § 193).]

The Court further recognized that the analysis requires recognition of "a governmental interest" test in assessing a particular state's significant relationship in the cause of action at issue. *Id.* at 35–36, 417 *A.*2d 488; *See also, e.g., Mellk v. Sarahson,* 49 *N.J.* 226, 229, 229 *A.*2d 625 (1967); *Haggerty v. Cedeno,* 279 *N.J.Super.* 607, 611, 653 *A.*2d 1166 (App.Div.), *certif. denied,* 141 *N.J.* 98, 660 *A.*2d 1197 (1995). From this amalgam of rules and tests evolved the following formulation to be applied to choice of law issues "particularly in the area of automobile litigation":

> This calls for the recognition of the rule that the law of the place of the contract ordinarily governs the choice of law because this rule will generally comport with the reasonable expectations of the parties concerning the principal situs of the insured risk during the term of the policy and will furnish needed certainty and consistency in the selection of the applicable law. At the same time, this choice-of-law rule should not be given controlling or dispositive effect. It should not be applied without a full comparison of the significant relationship of each state with the parties and the transaction. That assessment should encompass an evaluation of the important state contacts as well as a consideration of the state policies affected by, and governmental interest in, the outcome of the controversy.
>
> ... [Thus,] the law of the place of the contract will govern ... unless the dominant and significant relationship of another state to the parties and the underlying issue dictates that this basic rule should yield.
>
> [*State Farm, supra,* at 37, 417 *A.*2d 488 (citations omitted).]

We have uniformly applied the *State Farm* rule in addressing choice-of-law issues. *See, e.g., New Jersey Manufacturers Ins. Co. v. MacVicar,* 307 *N.J.Super.* 507, 512–13, 704 *A.*2d 1343 (App.Div.1998) (noting that "[w]e have long since rejected a mechanical application of the traditional test of the place of the making of the contract in favor of the governmental interest test and the 'most significant relationship' standard of the *Restatement*

*(Second) of Conflicts of Laws,* § 188 (1971)"); *Permacel v. American Ins. Co.,* 299 *N.J.Super.* 400, 406, 691 *A.*2d 383 (App.Div.1997) (observing that *State Farm* requires focusing on the state that has "the most significant connections with the parties and the transaction"); *Canal Ins. Co. v. F.W. Clukey Trucking Co.,* 295 *N.J.Super.* 131, 141, 684 *A.*2d 953 (App.Div.1996) (applying *State Farm* and noting that such application requires identifying the potential consequences of applying New Jersey law and the interests that will be affected); *and see The Gilbert Spruance Co., supra,* 134 *N.J.* 96, 629 *A.*2d 885 (1993) (where the Court noted in a toxic tort case involving out-of-state waste which was ultimately dumped at a New Jersey site, that the "location of the risk has less significance when a movable risk is concerned or when 'the policy covers a group of risks that are scattered throughout two or more states.'")

■ An analysis of the relevant facts in this case leads to the conclusion that New York has the most significant interest in this matter warranting the application of New York law. We first observe that the insurance contract was made in New York by a New York corporation. The policy issued to National Drum identifies the primary location of the risk to be New York. Plaintiff, the injured party, is a New York resident; the injury occurred in Connecticut. While the alleged negligence took place in New Jersey, the vehicle thereafter travelled to New York where it was reloaded at the insured's New York facility and then moved on to Connecticut. As is plaintiff, the parties are closely associated with New York. The trailer owner, National Drum, although it does business in New Jersey, has its regular place of business in New York. The carrier, although authorized to do business in New Jersey, maintains its principal office in New York. The alleged negligent corporation, although maintaining its principal place of business in New Jersey, is a New York corporation. In sum, aside from the situs of the contract in New York, both New Jersey and New York have relevant interests in both the parties and the transaction. The next step in the analysis

requires a weighing of the significant or governmental interests involved.

In *Haggerty v. Cedeno, supra,* 279 *N.J.Super.* 607, 653 *A.*2d 1166, we applied New York law when a New York rental car was rented in New Jersey, the accident took place in New Jersey and the vehicle was driven by a Florida resident. In applying the governmental-interest analysis, we said:

> Under that analysis, the determinative law is that of the state with the greater interest in governing the particular issue. . . . If an actual conflict exists [between the law of the interested states], the next step is to identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties. If a state's contacts are not related to the policies underlying its law, then that state does not possess an interest in having its law apply. Consequently, the qualitative, not the quantitative, nature of a state's contacts ultimately determines whether its law should apply.
>
> [*Id.* at 611, 653 *A.*2d 1166 (citations omitted) (quoting *Veazey v. Doremus,* 103 *N.J.* 244, 247–48, 510 *A.*2d 1187 (1986)).]

We concluded in *Haggerty* that New Jersey's interest in applying its law was "substantially diluted" where the owner was not a New Jersey resident, and the car was neither driven by a New Jersey resident nor registered in New Jersey.

In the present case, we are confronted with the conflict between New York law which requires timely notice of a claim to the insurer and New Jersey law which requires the insurer to show prejudice if the notice is late. The New York policy supporting the rule suggests that "[w]ithout timely notice an insurer may be deprived of the opportunity to investigate a claim and is rendered vulnerable to fraud. Late notification may also prevent the insurer from providing a sufficient reserve fund." *Power Auth. v. Westinghouse Elec. Corp.,* 117 *A.D.*2d 336, 502 *N.Y.S.*2d 420, 421– 22 (1986); *See also, Security Mut. Ins. Co. of New York v. Acker-Fitzsimons Corp.,* 31 *N.Y.*2d 436, 340 *N.Y.S.*2d 902, 905–06, 293 *N.E.*2d 76, 78–79 (1972) (observing that the notice requirement is designed to protect an insurer). In New York, the burden is placed on the insured to promptly notify the insurer and failing to do so, the insured's claim for relief may be dismissed. *Power Auth. v. Westinghouse Elec. Corp., supra,* 502 *N.Y.S.*2d at 421–22.

Under New Jersey law, the breach of the notice provision will result in a sustainable declination of coverage only if the insurer satisfies a threshold burden of demonstrating "appreciable prejudice" resulting from the delay. *Sagendorf v. Selective Ins. Co. of Amer.*, 293 *N.J.Super.* 81, 93, 679 *A*.2d 709 (App.Div.1996) (citing *Morales v. National Grange Mut. Ins. Co.*, 176 *N.J.Super.* 347, 355–56, 423 *A*.2d 325 (Law Div.1980)). Since the notice was concededly late, plaintiff is not entitled to coverage if New York law applies.

Applying the *State Farm* and *Restatement* standards, we conclude that New York has the significant governmental and substantial interest here, and New York law should apply. As we have noted, both the insurer and insured are New York residents. The policy contract was executed and the policy was issued in New York. The legitimate expectations of the parties were that the laws of New York would apply, that is, the insurer, CIIC, would receive timely notice of the claim and the insured, National Drum, would be obligated to give such notice. Even Polarome, the claimant here, is a New York resident although it does business in New Jersey. Surely New York's interest in protecting its residents, meeting their contractual expectations and enforcing contracts entered into within its borders outweighing New Jersey's limited interest in this matter. We conclude that New York law should apply and the motion judge properly granted summary judgment dismissing Polarome's claim. Because this issue is dispositive of the merits of this matter, we do not address the remaining issues raised on this appeal.

Affirmed.