719 A.2d 196 (1998)
315 N.J. Super. 547
HARROW STORES, INC., Plaintiff-Appellant/ Cross-Respondent,
v.
The HANOVER INSURANCE COMPANY and Massachusetts Bay Insurance Company, Defendants-Respondents/ Cross-Appellants, and
Trojan Metal Fabrication, Inc., Rudy Reino, Donato Reino, Newport Trojan and Lisa D'Achille, Defendants-Respondents.
The HANOVER INSURANCE COMPANY and Massachusetts Bay Insurance Company, Defendants/Third-Party Plaintiffs,
v.
UNITED COMMUNITY INSURANCE CO., Third-Party Defendant.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1998.
Decided October 30, 1998.
*197 Mark M. Tallmadge, Florham Park, for plaintiff-appellant/cross-respondent (Bressler, Amery & Ross, attorneys; Mr. Tallmadge and Sean T. O'Neil, on the brief).
Rudolph G. Morabito, Montclair, for defendants-respondents/cross-appellants (Garrity, Graham, Favetta & Flinn, attorneys; Mr. Morabito, of counsel and on the brief; Laura M. Plastine, on the brief).
Respondents Trojan Metal Fabrication, Inc., Rudy Reino, Donato Reino, Newport Trojan and Lisa D'Achille, did not file briefs.
Before Judges PRESSLER, KLEINER and STEINBERG.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This appeal requires us to construe N.J.S.A. 17:30A-12b, added to the New Jersey Property-Liability Insurance Guaranty Act, N.J.S.A. 17:30A-1 to -20, by L. 1996, c. 156, § 2. The question is whether that amendment requires the exhaustion by the claimant of all other available insurance before resort may be had to the Property-Liability Insurance Guaranty Association as the "deemed" insurer in the place of an insolvent insurer. We hold that it does, and accordingly reverse that portion of the summary judgment entered by the trial court adjudicating otherwise.
The facts are simple and undisputed. Plaintiff Harrow Stores, Inc., is a New York corporation doing business in New Jersey and operating two retail stores in this state. Donato Reino, a resident of Springfield, New Jersey, bought patio furniture from Harrow's Union store in early summer 1990. The furniture was manufactured by Trojan Metal Fabrication, Inc., doing business as Newport Trojan. In August 1990, a cousin of Reino's, Lisa D'Achille, also a Springfield resident, was injured when the Trojan chair on which she was sitting at Reino's home collapsed. D'Achille wrote to Trojan in December 1990 advising it of the mishap. Her attorney sent claim letters to both Trojan and Harrow the following month. By this time, apparently, Trojan was in bankruptcy and did not advise its products liability insurer, defendant Hanover Insurance Company,[1] of the claim. D'Achille started suit in New Jersey against Reino, Trojan and Harrow in December 1991. Harrow cross-claimed against Trojan for indemnity. Trojan never answered, and Hanover still had not been noticed. Harrow was afforded a defense and indemnity by its products liability insurer, United Community Insurance Company (UCIC). However, during the pendency of the D'Achille action, United Community became insolvent, and the Property-Liability Insurance Guaranty Association took over the defense and the obligation of indemnity.
In 1994, during the course of discovery in the D'Achille action, Harrow first learned that it was a named insured under Hanover's coverage of Trojan by reason of a vendor's endorsement in the Trojan policy. The Hanover coverage had a one million dollar per claim limit. Accordingly, Harrow demanded a defense and indemnity from Hanover, and instituted this declaratory coverage action when Hanover disclaimed on the ground of late notice. The Association is effectively *198 prosecuting the coverage action as well as defending the underlying D'Achille action.[2]
As initially framed, the principal issue in the coverage action was choice of law, Hanover claiming that New York law applied to the interpretation of its policy and Harrow claiming that New Jersey law applied. The choice of law issue was critical since, under New York law, timely notice to the insurer of the claim is required while, under New Jersey law, the insurer must show prejudice resulting from late notice in order to defeat coverage on that ground. See, e.g., Polarome Mfg. Co. v. CIIC, 310 N.J.Super. 168, 175, 708 A.2d 450 (App.Div.), certif. denied, 155 N.J. 590 (1998). Relying on the late notice, Hanover moved for summary judgment dismissing the coverage action, and Harrow filed a cross-motion for summary judgment adjudicating coverage. By letter opinion, the motion judge concluded that on the basis of the undisputed facts, application of the governmental interest test pointed to New Jersey as the state with the dominant interest and, therefore, as the state whose insurance law on the issue of notice controlled. While the judge consequently denied Hanover's motion, he also denied Harrow's since the question of actual prejudice to Hanover resulting from the late notice remained in dispute.
While the action was in that posture, the Legislature amended the Property-Liability Insurance Guaranty Act by the adoption of N.J.S.A. 17:30A-12b, effective January 8, 1997, providing in full as follows:
Any person having a claim against an insurer, whether or not the insurer is a member insurer, under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his right under that other policy. An amount payable on a covered claim under P.L. 1974, c. 17 (C. 17:30A-1 et seq.) shall be reduced by the amount of recovery under any such insurance policy.
That provision was made expressly applicable to all pending unpaid claims, L. 1996, c. 156, § 5, and Hanover, accordingly, concedes that it applies to Harrow's coverage claim against it. Harrow then, in reliance on the amendment, sought a declaration that Hanover's coverage for the D'Achille claim would first have to be exhausted before the Association could be called upon to meet the coverage obligations of its insolvent insurer in respect of that claim.
The matter was then fully briefed and reargued. With respect to Hanover's coverage, the judge was now satisfied that Hanover had failed to demonstrate substantial undue prejudice as a result of Harrow's late notice of the D'Achille claim, and consequently Harrow was deemed entitled to summary judgment in its favor on the coverage issue. With respect, however, to N.J.S.A. 17:30A-12b, the judge rejected Harrow's interpretation. The judge read the statute to mean that if there is more than one policy covering a victim's loss or damage, all those policies constitute "other insurance" even if the issuer of one of those policies is insolvent. Consequently, he concluded that the policy issued by the now insolvent UCIC constituted viable other insurance also subject to exhaustion and, since UCIC was insolvent, the Association was required to stand in its place, at least up to the $300,000 maximum payment limitation prescribed for the Fund by N.J.S.A. 17:30A-8a(1). The judge thus held that the UCIC policy and the Hanover policy were both primary, imposing upon Hanover the obligation to pay one-half of D'Achille's damages and imposing upon the Association, as "standing in" for UCIC, the obligation to pay the other half. A conforming judgment was entered.[3]
Harrowactually the Association, which is prosecuting the coverage actionappeals from that portion of the judgment requiring contribution to payment of the D'Achille claim on the basis of the UCIC policy. Hanover cross-appeals from that portion of the *199 judgment adjudicating its liability for coverage, urging, as it did in the trial court, that New York law applies to the timeliness of notice issue.
We consider first the issue raised by the cross-appeal. We affirm that portion of the judgment substantially for the reasons stated by the motion judge in his letter opinion. We add only the following. New Jersey follows the Restatement (Second) of Conflicts (1971) in respect of insurance-contract choice of law disputes. See, e.g., Pfizer, Inc. v. Emp. Ins. of Wausau, 154 N.J. 187, 194-198, 712 A.2d 634 (1998); Gilbert Spruance v. Pennsylvania Mfrs., 134 N.J. 96, 100, 629 A.2d 885 (1993). The starting point of the Restatement analysis is § 193, stating that:
The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.
To begin with, we are satisfied that for purposes of a vendor's endorsement, the anticipated and actual location of the insured risk is the place where the vendor makes the sale that is the basis of the claim. That place in this case was New Jersey. We are also satisfied that even if New Jersey were not the location of the risk, it has, nevertheless, the most significant relationship under the principles stated by § 6. It is true that the primary insured, Trojan, was a New York corporation, manufacturing its product only in New York, that Harrow is also a New York corporation, and that the contract of insurance was negotiated and consummated in New York. But it is also true that Harrow does business in New Jersey, that the sale of the defective product was made in New Jersey, that a New Jersey resident bought the defective product here, and that a New Jersey resident was injured by it.
New Jersey's interests are obvious. First, of course, is its interest in imposing responsibility on entities doing business here and who, in New Jersey, place defective products into the stream of commerce. See, e.g., Gantes v. Kason Corp., 145 N.J. 478, 490, 679 A.2d 106 (1996). No less significant is New Jersey's interest in the protection of its citizens and the availability to persons injured in this state of a remedy under its protective laws, including access to the Property-Liability Insurance Guaranty Fund. See, e.g., J. Josephson v. Crum & Forster, 293 N.J.Super. 170, 183-184, 679 A.2d 1206 (App.Div.1996). We recognize New York's interest in assuring that timely notice is given to insurers so that they may promptly investigate and fairly dispose of claims. We are nevertheless persuaded that this interest is only minimally, if at all, offended by application of New Jersey's notice rule when a vendor's endorsement is involved and the sale and ensuing injury have taken place not in New York but rather in New Jersey. Compare Polarome, supra, 310 N.J.Super. at 175-176, 708 A.2d 450 (New York notice law applied where New Jersey had only a tangential nexus to the claim and hence no outweighing significant relationship). In sum, we think it plain that under the circumstances here, New Jersey's interest in its notice rule is dominant.
We disagree, however, with the trial judge's construction of N.J.S.A. 17:30A-12b. We note at the outset that the evident purpose of that provision was to conserve the assets of the Property-Liability Insurance Guaranty Fund by shielding it from liability for the obligations of insolvent insurers where there is other insurance covering the same claim that is covered by the insolvent insurer's policy. Nothing could be plainer than the Statement of the Senate Commerce Committee appended to Assembly, No. 810, enacted as L. 1996, c. 156. That Statement explains that "applicable policies of solvent insurers must be exhausted before either fund [Property-Liability Insurance Guaranty Fund and New Jersey Surplus Lines Insurance Guaranty Fund] is responsible for the covered claim." It is plain that the trial court's interpretation of the amendment defeats that purpose.
*200 We are, moreover, satisfied that while the drafting of the amendment could, as the trial court noted, have been clearer, its text nevertheless plainly expresses the legislative intent. The Association is a private, non-profit, unincorporated legal entity whose membership includes all insurers writing defined types of direct insurance in this state, including general casualty and liability insurance. N.J.S.A. 17:30A-6. Its purpose, as explained by N.J.S.A. 17:30A-2a, is to
provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay payment, to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.
To implement this purpose, N.J.S.A. 17:30A-8a(2) provides that the Association shall "[b]e deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent...."
It is clear that prior to the adoption of section 12b, if a claim was covered both by an insolvent insurer and a solvent insurer, that is, if there were "other insurance," the obligation of the Fund, as the "deemed" insurer in place of the insolvent insurer, was defined by the "other insurance" clause of the insolvent insurer's policy, subject only to the Fund's $300,000 limit. It is also clear that that "other insurance" consequence was precisely what section 12b addressed and was intended to modify. Read in this light, the import of section 12b is, in our view, unmistakable. It provides, as relevantly redacted, that "any person having a claim against an insurer ... under any provision in an insurance policy other than a policy of an insolvent insurer ... shall be required to exhaust first his right under that other policy." The phrase "that other policy" which concludes the sentence obviously refers to the policy of the insurer who is not insolvent. Thus where the same covered claim is covered both by a solvent insurer's policy and an insolvent insurer's policy, the insolvent insurer's policy, irrespective of any "other insurance" clause in the policy, cannot be resorted to by the claimant until the policy limits under the solvent insurer's policy are exhausted. Therefore, until such exhaustion, the Association, as the "deemed" insurer under the insolvent insurer's policy, has no obligation. D'Achille's claim against Harrow was covered both by Harrow's insolvent insurer, UCIC, and its solvent insurer, Hanover. Hanover's policy was required to be first exhausted. Its policy limits entirely covered the D'Achille claim. The Association has no obligation.
Finally, we note that our construction of section 12b is consistent with our dicta in Sayre v. Ins. Co. of N. America, 305 N.J.Super. 209, 214-215, 701 A.2d 1311 (App.Div.1997). It is also consistent with that of almost every other state that has adopted a virtually identical provision. See Stecher v. Iowa Ins. Guar. Ass'n., 465 N.W.2d 887 (Iowa 1991); Oglesby v. Liberty Mut. Ins. Co., 832 P.2d 834 (Okla.1992); Nasello v. Transit Casualty Co., 530 So.2d 1114 (La.1988); Zurich Ins. Co. v. Transamerica Ins. Co., 34 Cal.Rptr.2d 913 (Ct.App.1994); Blackwell v. Pennsylvania Ins. Guar. Ass'n., 390 Pa.Super. 31, 567 A.2d 1103 (Pa.Super.1989); Vokey v. Massachusetts Insurers Insolvency Fund, 381 Mass. 386, 409 N.E.2d 783 (Mass.1980); Harrell v. Reliable Ins. Co., 258 Ill.App.3d 728, 197 Ill.Dec. 293, 631 N.E.2d 296 (Ill.App.Ct.1994); Hawkins v. Kentucky Ins. Guar. Ass'n., 838 S.W.2d 410 (Ky.Ct.App.1992). This court has also so construed the cognate provision of the Pennsylvania Insurance Guarantee Association Act. Carvalho v. Toll Bros. & Devel., 278 N.J.Super. 451, 467, 651 A.2d 492 (App.Div.1995), aff'd, 143 N.J. 565, 675 A.2d 209 (1996). Only one state holds to the contrary. See Wyoming Ins. Guar. Ass'n. v. Allstate Indem. Co., 844 P.2d 464, 467 (Wyo.1992) (holding that WIGA's existence made the primary insurer's policy "collectible" so that Allstate's policy was not available until the primary insurer's policy limits, through WIGA, were exhausted).
As the California court observed in Zurich Ins. Co. v. Transamerica Ins. Co., supra, 34 Cal.Rptr.2d at 924, "[t]he Legislature chose *201 to provide a limited form of protection for the public, not a fund for the protection of other insurance companies from the insolvencies of fellow members." That was the New Jersey legislative intent as well in adopting section 12b, and that intent must govern its interpretation.
The summary judgment is affirmed to the extent it declares defendant Hanover Insurance Company liable on its policy. It is reversed to the extent that it imposes "other insurance" liability on Harrow's insolvent insurer and thereby on the Property-Liability Insurance Guaranty Fund. We remand for entry of judgment consistent with this opinion.
NOTES
[1] Defendant Massachusetts Bay Insurance Company is a subsidiary of Hanover. Both defendants are referred to collectively as Hanover.
[2] Although Harrow is the named party plaintiff in this coverage action, it is being prosecuted by counsel assigned by the Association, and it is represented to us that Harrow's position is that of the Association.
[3] The D'Achille claim was ultimately settled for $350,000. Reino contributed $35,000 and the remaining $315,000 was divided between Hanover and the Association.