783 A.2d 745

JOHN HARTMAN, PLAINTIFF–APPELLANT,
v. ALLSTATE INSURANCE COMPANY,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 9, 2001—Decided November 9, 2001.

Before Judges HAVEY, COBURN [1] and WEISSBARD.

*Alexander W. Ross, Jr.*, argued the cause for appellant, (*Rakoski & Ross*, attorneys; *Mr. Ross*, on the brief).

*Peter J. Van Dyke*, argued the cause for respondent, (*Kelaher, Garvey, Ballou and Van Dyke*, attorneys; *Mr. Van Dyke*, on the brief).

The opinion of the court was delivered by

WEISSBARD, J.A.D.

On June 26, 1993, plaintiff, John Hartman, sustained injuries during the course of his employment with South Jersey East Coast Paving. As a result, Hartman received workers' compensation benefits from Travelers Property and Casualty Insurance

---

[1] Judge Coburn did not originally participate in this case, but has, with the consent of counsel, been added to the panel deciding the matter.

Company (Travelers), or its predecessor in interest, Aetna Casualty and Surety, in the total amount of $133,718.73.[2]  Hartman's injuries resulted from an automobile accident caused by an uninsured third-party.  Hartman thereafter obtained a default judgment against the uninsured motorist for $140,000, while his wife was awarded $10,000 on her *per quod* claim.

Hartman was insured with defendant, Allstate Insurance Company, under a policy with uninsured motorist (UM) limits of $100,000.  Hartman filed a UM claim with Allstate and on March 1, 1999, James Pepe, an Allstate representative, notified Hartman's attorney that Allstate had agreed to pay the full policy limits in settlement of the claim.  Allstate acknowledged receipt of the compensation lien.  However, the matter quickly reached an impasse.

Hartman's counsel sought to have Travelers agree to a ⅓, ⅓, ⅓ split of the UM proceeds among Travelers, Hartman, and Hartman's attorney.  When Travelers insisted upon receiving its full net lien of $88,279.15, Hartman decided to abandon his UM claim.[3]

After Allstate refused Travelers' demand for payment of the compensation lien, Travelers instituted this action, in the name of Hartman, directly against Allstate.  *See N.J.S.A.* 34:15–40(f).  The trial court, on Allstate's motion for summary judgment, dismissed the suit on the basis that the applicable statutory provision, *N.J.S.A.* 34:15–40(f), did not provide the compensation carrier with the right to institute such an action on its own behalf.  We construe the statute differently and reverse.  We direct that Allstate pay to Travelers, for the benefit of Hartman, the full UM policy limits that it previously tendered.

------

[2] The compensation payments were comprised of $32,460.01 in medical payments and $101,258.72 in indemnity payments.

[3] The net lien is 2/3 of the gross lien plus $200.  *N.J.S.A.* 34:15–40(e).  Hartman would have personally received only $11,720.85, less his attorney's fee, after satisfaction of Travelers' lien.

We must quote the applicable statutory provision in full, *N.J.S.A.* 34:15–40(f):

> When an injured employee or his dependents fail within 1 year of the accident to either effect a settlement with the third person or his insurance carrier or institute proceedings for recovery of damages for his injuries and loss against the third person, the employer or his insurance carrier, 10 days after a written demand on the injured employee or his dependents, can either effect a settlement with the third person or his insurance carrier or institute proceedings against the third person for the recovery of damages for the injuries and loss sustained by such injured employee or his dependents and any settlement made with the third person or his insurance carrier or proceedings had and taken by such employer or his insurance carrier against such third person, and such right of action shall be only for such right of action that the injured employee or his dependents would have had against the third person, and shall constitute a bar to any further claim or action by the injured employee or his dependents against the third person. If a settlement is effected between the employer or his insurance carrier and the third person or his insurance carrier, or a judgment is recovered by the employer or his insurance carrier against the third person for the injuries and loss sustained by the employee or his dependents and if the amount secured or obtained by the employer or his insurance carrier is in excess of the employer's obligation to the employee or his dependents and the expense of suit, such excess shall be paid to the employee or his dependents. The legal action contemplated hereinabove shall be a civil action at law in the name of the injured employee or by the employer or insurance carrier in the name of the employee to the use of the employer or insurance carrier, or by the proper party for the benefit of the next of kin of the employee. Where an injured employee or his dependents have instituted proceedings for recovery of damages for his injuries and loss against a third person and such proceedings are dismissed for lack of prosecution, the employer or insurance carrier shall, upon application made with 90 days thereafter, be entitled to have such dismissal set aside, and to continue the prosecution of such proceedings in the name of the injured employee or dependents in accordance with the provisions of this section.

Thus, the statute gives the compensation carrier the right, under certain circumstances, to either "effect a settlement with the third person or his insurance carrier or institute proceedings *against the third person* ...." *Ibid.* (emphasis added). If the statute were to be read literally, this action would be prohibited because Travelers did not institute suit against the third-party tortfeasor but, rather, against the employee's UM carrier. However, we do not write on a clean slate.

A similar fact pattern was addressed in *Midland Insurance Co. v. Colatrella*, 102 *N.J.* 612, 510 *A.*2d 30 (1986). There, Colatrella

was injured while working and received compensation benefits from Midland, his employer's workers' compensation carrier. Colatrella also filed a claim under the UM provision of his personal auto policy with Travelers. Midland's lien was $9,270.52. During the pendency of UM arbitration proceedings, Colatrella settled his UM claim with Travelers for $27,500 out of a policy limit of $30,000, and gave Travelers a hold-harmless agreement. Thereafter, Midland sued Colatrella and Travelers for reimbursement of its lien and Travelers cross-claimed against Colatrella for indemnification. The Law Division ordered Colatrella to reimburse Midland and to indemnify Travelers. This court affirmed, holding that the compensation lien attached to the UM settlement proceeds. *Midland Ins. Co. v. Colatrella*, 200 *N.J.Super.* 101, 490 *A.*2d 366 (App.Div.1985), *aff'd*, 102 *N.J.* 612, 510 *A.*2d 30 (1986).

The Supreme Court affirmed, holding that, in effect, "an uninsured motorist provision is a contractual substitute for a tort action against an uninsured motorist." *Colatrella, supra*, 102 *N.J.* at 617, 510 *A.*2d 30. The Court reasoned that:

> the tortious act of a third-party is the predicate for both recovery of uninsured motorist proceeds and the assertion of a workers' compensation lien. Because recovery under uninsured motorist insurance is premised on the tortious conduct of another, the proceeds of that recovery, like the proceeds of an injured employee's third-party action, should be subject to a compensation lien.
>
> [*Ibid.*]

In reaching this result, the Court agreed with an earlier Appellate Division holding in *Montedoro v. City of Asbury Park*, 174 *N.J.Super.* 305, 416 *A.*2d 433 (App.Div.1980), that the reference to "third person" in *N.J.S.A.* 34:15–40, quoted above, could be construed to include an uninsured motorist. *Colatrella, supra*, 102 *N.J.* at 617, 510 *A.*2d 30. The Court rejected the decision of another Appellate Division panel in *Pullen v. Travelers Insurance Co.*, 206 *N.J.Super.* 227, 502 *A.*2d 70 (App.Div.1985), that a workers' compensation lien did not attach to the proceeds of the employee's UM coverage; accordingly, the Court summarily reversed Pullen. *Colatrella, supra*, 102 *N.J.* at 618–19, 510 *A.*2d 30.

The Court expanded upon *Colatrella* in *Frazier v. New Jersey Manufacturers Insurance Co.*, 142 *N.J.* 590, 667 *A.*2d 670 (1995) and *Utica Mutual Insurance Co. v. Maran & Maran*, 142 *N.J.* 609, 667 *A.*2d 680 (1995) by holding that a workers' compensation lien also attaches to the proceeds of a legal malpractice suit brought against an attorney who failed to institute an action against the third-party tortfeasor responsible for the worker's injury. Referring to its decision in *Colatrella*, the Court stated that the compensation lien applies "to recoveries that were the functional equivalent of a recovery from the actual third-party tortfeasor." *Frazier, supra*, 142 *N.J.* at 598, 667 *A.*2d 670.

Thus, it is clearly settled that Travelers' compensation lien could attach to the proceeds of any UM recovery out of Hartman's policy with Allstate. Nevertheless, Allstate points out the differences between this case and the *Colatrella–Frazier–Utica* trilogy.

First, there were no "proceeds" here because Hartman, although offered the full amount of Allstate's UM coverage, opted to reject the offer and "walk away" from the UM claim. We do not find this argument persuasive. The statute gives the compensation carrier certain distinct rights of recovery where there is a third-party tortfeasor or a "functional equivalent." We do not believe that Hartman can frustrate Travelers' statutory right to recovery, and the underlying purpose of the legislation as set out in *Colatrella* and *Frazier*, by refusing to accept the proffered UM settlement, an action that would not only penalize Travelers, through no fault of its own, but would unjustly enrich Allstate, whose coverage exists for the precise purpose of substituting for the absent coverage of the tortfeasor. We conclude that there were "proceeds" available in these circumstances. Where the employee unilaterally elects to abandon a viable claim that could reimburse the compensation carrier, that carrier may step into the employee's shoes and pursue the claim directly, as Travelers did here.

Second, Allstate points out that the compensation carrier's rights under the statute, whether to settle or to institute proceed-

ings, only come into play if the injured employee fails to settle or institute proceedings within one year of the accident. Here, Hartman did in fact initiate suit against the tortfeasor and obtained a default judgment. Again, we find Allstate's argument, under the peculiar circumstances of this case, to be unavailing. In effect, by virtue of his action in obtaining the default judgment and then failing to pursue the UM claim, Hartman rendered his action against the tortfeasor a nullity. Under these circumstances, obtaining the default judgment was a meaningless act.

Here again, while Hartman may not have intended such a result at the outset, his action in instituting suit cannot be used to frustrate Travelers' legitimate statutory claim to the UM coverage. The provision in question presupposes that the employee will bring an action against, or attempt settlement with, an insured tortfeasor or with an available UM carrier. If the employee does not do so, then the compensation carrier can act in the employee's place. Here, Hartman instituted a meaningless action against an uninsured and unrepresented tortfeasor and then failed to pursue the available UM claim. This is not the type of situation in which the compensation carrier should be left without a remedy as a result of the employee having instituted suit within a year.

We conclude, contrary to the view expressed by the motion judge, that our interpretation, and the result we reach, does foster the fundamental purpose of *N.J.S.A.* 34:15–40.

■ Having determined that Travelers' motion for summary judgment should have been granted, we must determine what follows. If we were to remand for a determination of damages, the proper course would be to direct dismissal of the Law Division action and proceed with arbitration under the provisions of the Allstate policy. In this case, however, we believe such a course would be fruitless.

On March 1, 1999, Allstate tendered the full amount of its UM coverage to Hartman. Allstate now suggests, however, that it would be prepared to litigate the value of Hartman's injuries

based on its own medical evaluations, particularly those of Dr. O'Reilly–Gundhart in his reports of June 17, and August 8, 1996.

Although those reports do suggest a viable issue as to the nature and extent of Hartman's injuries, as they relate to the accident of June 1993, Allstate had those reports for more than two and one half years before offering its full UM coverage in settlement.

While we agree that Travelers is mistaken in viewing the Allstate proffer as a binding settlement, we believe that, under the circumstances present here, Allstate is precluded from contesting the quantum of damages. Certainly, if Travelers had known of the offer, and if Allstate recognized that Travelers had the right to proceed against it directly under *N.J.S.A.* 34:15–40, the matter would have been concluded in March 1999. As a result, we believe that Allstate is bound to its March 1999 offer and should be required to pay the full $100,000 UM policy limit to Travelers. Travelers' net lien will be satisfied and the balance will be paid over to Hartman or his attorney. Of course, appropriate releases should be exchanged.

Reversed and remanded for further proceedings consistent with this opinion.