954 A.2d 520 (2008)
402 N.J. Super. 381
Henry POSSO, Plaintiff-Appellant,
v.
ACCELERATION NATIONAL INSURANCE COMPANY and Redland Transportation, Defendants, and
New Jersey Property-Liability Insurance Guaranty Association, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 12, 2008.
Decided September 4, 2008.
*521 Dean S. Pashaian, argued the cause for appellant (Rothenberg & Pashaian, attorneys, Union; Mr. Pashaian, of counsel and on the brief; Robert E. Taylor, Jr., on the brief).
Mark M. Tallmadge, Florham Park, argued the cause for respondent (Bressler, Amery & Ross, attorneys; Mr. Tallmadge, on the brief).
Before Judges STERN, COLLESTER and C.L. MINIMAN.
The opinion of the court was delivered by
C.L. MINIMAN, J.A.D.
Plaintiff Henry Posso appeals from the October 20, 2006, dismissal of his claim against defendant New Jersey Property-Liability Insurance Guaranty Association (PLIGA). Plaintiff was rendered a quadriplegic *522 in a work-related automobile accident on April 2, 1999, which was caused in major part by the negligence of a phantom vehicle. The New Jersey Manufacturers Insurance Company (NJM), as the workers' compensation carrier, provided medical care and wage-loss benefits to him. Plaintiff asserted an uninsured motorist (UM) claim against Acceleration National Insurance Company/Redland Insurance Company[1] (collectively "Acceleration")[2] on October 11, 2000, and NJM asserted a workers' compensation lien of almost $1.3 million. Plaintiff had $500,000 in UM coverage with Acceleration, but it was declared insolvent by the Court of Common Pleas in Ohio. As a consequence, plaintiff is limited by the New Jersey Property-Liability Insurance Guaranty Association Act (Guaranty Act), N.J.S.A. 17:30A-1 to -20, to seeking recompense from PLIGA for an amount not to exceed $300,000. N.J.S.A. 17:30A-8(a)(1).
PLIGA defended the claim and was ordered to participate in arbitration. Plaintiff received a net arbitral award of $6 million. PLIGA then filed a motion to dismiss on the ground that the workers' compensation benefits received by plaintiff extinguished any obligation of PLIGA to pay. Plaintiff cross-moved to enforce the award. The judge concluded that PLIGA was not obligated to pay because the workers' compensation lien extinguished the statutory maximum, denied plaintiff's motion to enter judgment for $300,000 and dismissed the action with prejudice. This appeal followed. We reverse and remand for entry of a judgment compelling PLIGA to pay $300,000 to plaintiff.
The scope of our review of this summary judgment is de novo because it presents only a question of law. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").
The Guaranty Act was adopted by the Legislature to provide recovery to New Jersey residents after an insurer has been declared insolvent. The Legislature stated:
The purpose of this act is to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment, to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, to provide an association to assess the cost of such protection among insurers, and to provide a mechanism to run off, manage, administer and pay claims asserted against the Unsatisfied Claim and Judgment Fund, created pursuant to P.L. 1952, c. 174 (C. 39:6-61, et seq.), the New Jersey Automobile Full Insurance Underwriting Association, created pursuant to P.L. 1983, c. 65 (C. 17:30E-1, et seq.), and the Market Transition Facility, created pursuant to section 88 of P.L. 1990, c. 8 (C. 17:33B-11).
[N.J.S.A. 17:30A-2(a).[3]]
*523 The legislation created PLIGA, a private, "nonprofit, unincorporated association," to implement the Guaranty Act. N.J.S.A. 17:30A-6; Am. Employers' Ins. Co. v. Elf Atochem N.A., Inc., 157 N.J. 580, 587, 725 A.2d 1093 (1999). PLIGA is financed by all New Jersey insureds through policy surcharges imposed by their automobile insurance carriers, which are paid over to PLIGA to cover claims made against it. N.J.S.A. 17:30A-8(a)(3); Carpenter Tech. Corp. v. Admiral Ins. Co., 172 N.J. 504, 508, 800 A.2d 54 (2002) (citing Railroad Roofing & Bldg. Supply Co. v. Fin. Fire & Cas. Co., 85 N.J. 384, 389-90, 427 A.2d 66 (1981)).
PLIGA is obligated to assume the contractual obligations of insolvent insurers and pay "covered claims" as defined by N.J.S.A. 17:30A-5:
"Covered claim" means an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage, and not in excess of the applicable limits of an insurance policy to which this act applies, issued by an insurer, if such insurer becomes an insolvent insurer after January 1, 1974, and (1) the claimant or insured is a resident of this State at the time of the insured event; or (2) the property from which the claim arises is permanently located in this State.
"Covered claim" shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise; provided, that a claim for any such amount, asserted against a person insured under a policy issued by an insurer which has become an insolvent insurer, which, if it were not a claim by or for the benefit of a reinsurer, insurer, insurance pool, or underwriting association, would be a "covered claim," may be filed directly with the receiver of the insolvent insurer, but in no event may any such claim be asserted in any legal action against the insured of such insolvent insurer[.][4]
There is no dispute that (1) plaintiff's UM claim is within Acceleration's UM coverage, (2) the claim is not in excess of Acceleration's policy limits, (3) the Guaranty Act applies to the policy, (4) Acceleration is an insurer as defined by the Guaranty Act, (5) Acceleration was declared insolvent after January 1, 1974, and (6) plaintiff was a New Jersey resident at the time of the accident. The sole issue in this case is whether plaintiff's UM claim is "an unpaid claim" within the meaning of N.J.S.A. 17:30A-5 at the time of the accident as he received workers' compensation benefits in excess of $300,000.
The Guaranty Act was intended "to spread equitably the risk of insurer insolvency." Carpenter Tech., supra, 172 N.J. at 515, 800 A.2d 54.
However, the legislative desire to assist claimants cannot be, and is not intended to be, bureaucratic benevolence. The Legislature did not give NJPLIGA unfettered discretion to accommodate all claimants for any claims. The conservation of resources is a major goal. The Legislature signaled the need for restraint and caution in the payment of claims, and did so in a myriad of ways. Illustratively, NJPLIGA does not pay prejudgment interest on covered claims. N.J.S.A. 17:30A-5d. It is not liable for counsel fees incurred by a successful *524 party in a declaratory judgment coverage action against NJPLIGA. N.J.S.A. 17:30A-5d; New Jersey Guar. Ass'n v. Ciani, 242 N.J.Super. 164, 169, 576 A.2d 300 (App.Div.1990). The Act specifically excludes insurer subrogation claims from the definition of a covered claim. N.J.S.A. 17:30A-5d. Recovery against NJPLIGA is limited to unpaid claims that are either asserted by insureds or claimants who are residents of the State, or concern property permanently located in New Jersey. N.J.S.A. 17:30A-5. NJPLIGA is not responsible for "assessments or charges for failure of [the] insolvent insurer to have expeditiously settled claims." N.J.S.A. 17:30A-5d. Further, where a claim is covered both by a solvent insurer's policy and an insolvent insurer's policy, a policyholder first must exhaust his or her policy with the solvent insurer before NJPLIGA has any statutory obligation to pay the policyholder. "Therefore, until such exhaustion[,] [NJPLIGA], as the `deemed' insurer under the insolvent insurer's policy, has no obligation." N.J.S.A. 17:30A-12b; Harrow Stores, Inc. v. Hanover Ins. Co., 315 N.J.Super. 547, 555, 719 A.2d 196 (App.Div.1998). Finally, the Act's limitation of recovery at $300,000 per covered claim applies regardless of whether a claim-ant's policy limit exceeds that amount. N.J.S.A. 17:30A-8a(1).
[Id. at 515-16, 800 A.2d 54.]
Thus, PLIGA is under a duty to pay only covered claims. Id. at 525, 800 A.2d 54; see also Am. Employers', supra, 157 N.J. at 590, 725 A.2d 1093 (observing that the Legislature was concerned with conserving PLIGA's limited resources "`to better assure their availability to serve core purposes.'" (quoting N.J. Guar. Ass'n, supra, 242 N.J.Super. at 169, 576 A.2d 300)). Nonetheless, "the scope of relief under the Act is to be construed liberally to effect its purposes." Am. Employers', supra, 157 N.J. at 590, 725 A.2d 1093.
Although the parties agree that the workers' compensation carrier does not have a "covered claim" within the meaning of N.J.S.A. 17:30A-5(d) pursuant to Sussman v. Ostroff, 232 N.J.Super. 306, 313, 556 A.2d 1301 (App.Div.), certif. denied, 117 N.J. 143, 564 A.2d 865 (1989), and Primus v. Alfred Sanzari Enterprises, 372 N.J.Super. 392, 402, 859 A.2d 452 (App. Div.2004), certif. denied, 182 N.J. 430, 866 A.2d 987 (2005), they disagree as to whether plaintiff is entitled to any recovery at all from PLIGA. Plaintiff urges that Sussman controls the outcome of this action, whereas PLIGA contends that Primus supports the judge's conclusion that the claims against it cannot be maintained as a matter of law.
In Sussman, we held as follows:
We are therefore convinced that the legislatively mandated interrelationship between the workers' compensation insurer, [PLIGA], and the injured worker is simply this. The injured worker may not obtain a double recovery. If his recovery against the tortfeasor is less than his compensation benefits, the Guarantee Fund is liable for the tortfeasor's defense costs but is excused from indemnification. If the injured worker's recovery against the tortfeasor is greater than his compensation benefits, [PLIGA] is obliged to pay only the difference. And the workers' compensation insurer is limited, in asserting its reimbursement lien in either case, to a claim against the insolvent insurer's receiver.
This scheme is subject to ready implementation where the injured worker's claim against the tortfeasor goes to verdict. In that case, on presentation of appropriate proofs of the amount of the *525 worker's compensation lien, the trial judge can simply deduct the amount of the lien from the verdict and enter judgment in the reduced amount against the tortfeasor, directing it to be paid by [PLIGA], provided, however, that it does not exceed either the tortfeasor's policy limit or the Guarantee Fund's maximum liability.
[Sussman, supra, 232 N.J.Super. at 314-15, 556 A.2d 1301 (footnote omitted).]
In Primus, New Jersey Manufacturers Insurance Company had an anticipated workers' compensation lien of $266,510.94. Primus, supra, 372 N.J.Super. at 399, 859 A.2d 452. There were multiple named and fictitious defendants and, as discovery progressed, plaintiff made a claim against his initial attorneys, who were not joined in the action but whose malpractice carrier became insolvent and went into receivership. Ibid. Despite the nonjoinder of the tortfeasors and their carrier, PLIGA participated in a settlement conference that resulted in an overall settlement in the amount of $800,000 of which $50,000 was to be paid by PLIGA. Ibid. The precise issue before us on appeal was the manner in which the workers' compensation lien was to be satisfied. NJM sought reimbursement in full from the non-PLIGA settlement proceeds. Ibid. Plaintiff, on the other hand, sought to limit reimbursement of the NJM claim on a pro-rata basis in proportion to PLIGA's contribution to the settlement, which would have left NJM to seek to collect one-fifteenth of its lien from the insolvent carrier's receiver. Ibid. NJM intervened and opposed the application to reduce its lien by one-fifteenth. Ibid. The motion judge, however, concluded that Sussman required a pro rata distribution of the lien to all defendants and reduced NJM's lien accordingly. Id. at 399-400, 859 A.2d 452. We disagreed.
With respect to the Workers' Compensation Act, N.J.S.A. 34:15-1 to -142, we held: "The underlying purpose of N.J.S.A. 34:15-40 is to prevent double recovery . . . `from two different sources for the same injury.'" Id. at 401, 859 A.2d 452 (quoting Frazier v. N.J. Mfrs. Ins. Co., 142 N.J. 590, 603, 667 A.2d 670 (1995)). We concluded under N.J.S.A. 34:15-40 "that the lien attaches to the entire third-party recovery as an integrated whole. The lien is not fragmented and does not attach in piecemeal portions to the various sources of an overall recovery." Id. at 402, 859 A.2d 452.
We then turned to the issue of whether provisions of the Guaranty Act altered the full reimbursement requirement of the Workers' Compensation Act. Ibid. We cited Sussman for the proposition that "the claim of a compensation carrier to enforce its lien is not a covered claim." Ibid. We observed,
In essence, where there is third-party responsibility for the worker's injury, the compensation carrier serves as a temporary neutral conduit, providing immediate benefits to be later reimbursed. In the end, the third-party has paid and the injured party ends up with the same amounts they would have paid and received had there been no compensation lien. Thus, in the ordinary course, all third-party funds are subject to the compensation lien.
[Id. at 403, 859 A.2d 452.]
We observed that where PLIGA was "the only source of the third-party recovery. . . none of those funds are subject to the lien because the lien is not a covered claim." Ibid. We concluded that the anti-subrogation provision of N.J.S.A. 17:30A-5(d) also did not preclude full reimbursement of the NJM claim because the compensation lien attaches to "`any sum.'" Ibid. NJM was entitled to recover the full *526 amount of its lien from the non-PLIGA funds and none of the PLIGA funds would go to NJM. Ibid. Thus, there was no reason to reduce the amount of the lien by the percentage of contribution made by PLIGA. Ibid.
We then observed:
If, in a multi-defendant case with some non-[PLIGA] and some [PLIGA] funds, the non-[PLIGA] funds were inadequate to satisfy the compensation lien, then, to the extent of the shortfall, the compensation carrier would suffer a loss. In that situation, the plaintiff's recovery from the Association's contribution would be reduced by the amount of the shortfall, i.e. the difference between [PLIGA]'s contribution and the unreimbursed portion of the compensation lien.
[Id. at 403-404, 859 A.2d 452 (citing Sussman, supra, 232 N.J.Super. at 314-15, 556 A.2d 1301) (emphasis added).]
The emphasized dictum about multi-defendant cases led the judge here to conclude that plaintiff was not entitled to any recovery from PLIGA because plaintiff would not have had any recovery from his insolvent UM carrier had it been solvent given the size of the NJM lien. The judge misperceived the import of the language we used, which must be understood in the context of the facts before us at the time. We suggested only that where the total damages exceeded the amount recoverable from non-PLIGA funds but was equal to or less than the amount of recoverable PLIGA funds, the amount of the unreimbursed workers' compensation lien had to be deducted from PLIGA's obligation in order to prevent a double recovery. For example, if the total damages were $600,000, the amount of the compensation lien was $500,000, and the amount recoverable from non-PLIGA funds was $400,000, then PLIGA was liable for only $100,000. This is so because if PLIGA paid the difference between the non-PLIGA funds and the total damages, i.e., $200,000, then plaintiff would recover a windfall of $100,000 because the $500,000 that had been paid to plaintiff by the workers' compensation carrier, when combined with $200,000 from PLIGA, would result in plaintiff recovering a total of $700,000-$100,000 more than his total damages. In such a situation it is entirely correct to say that PLIGA's "contribution would be reduced by the amount of the shortfall." Id. at 404, 859 A.2d 452.
Here, by contrast, there was only one defendant. Unlike the defendants in Primus, the amount of the compensation lien is significantly less than the amount of the damages suffered by plaintiff. In such a situation, Sussman controls. Under Sussman, the compensation lien in a single-defendant case is not considered except for the purpose of determining the excess amount of recovery to which the plaintiff is entitled, a determination that is required to prevent a double recovery. The $1.3 million compensation lien should have been deducted from the $6 million arbitral award of damages. Of course, the net damages of $4.7 million is limited to the lesser of the insolvent insurer's policy limits or the statutory limits governing claims against PLIGA. No case has been cited in which we or the Supreme Court have held that, if the compensation lien exceeds the insolvent insurer's policy limits, resort to PLIGA is not available. Rather, NJM is permitted to make a claim against plaintiff's UM carrier's receiver for the full policy limits and plaintiffs are entitled to recover $300,000 from PLIGA. This is no "double recovery" because plaintiff is not receiving more than $6 million, unlike the potential scenario we discussed in Primus.
This construction of the Guaranty Act is buttressed by our Supreme Court's ruling in Thomsen v. Mercer-Charles, 187 N.J. 197, 901 A.2d 303 (2006), albeit in a different *527 context. There, PLIGA took the position that the plaintiff, who had been rendered a quadriplegic, was not entitled to recover $300,000 from it because he had recovered $1,000,000 from a second primary insurance policy covering the tortfeasors and N.J.S.A. 17:30A-12(b)[5] provided a setoff. Id. at 202, 901 A.2d 303. It urged that it was entitled to a dollar-for-dollar setoff, even though the parties stipulated that plaintiff's damages exceeded the total amount of the two one-million-dollar policies. Id. at 202, 901 A.2d 303.
The Court concluded that the language of N.J.S.A. 17:30A-12(b) was ambiguous and that
[t]he issue [wa]s whether the setoff applies to the entire amount payable on the person's loss, thereby reducing or perhaps eliminating the person's claim of damages before he or she need turn to [PLIGA] for satisfaction of the remainder, or whether the solvent insurer's payment is applied directly to the statutory maximum that [PLIGA] may pay on a "covered claim."
[Id. at 207-08, 901 A.2d 303.]
Because the Guaranty Act was a model act, the Court examined sister-state law in construing its language and held "that when an insured is covered by both a solvent and an insolvent insurer and the solvent insurer has paid the insured an amount exceeding the Act's maximum payment, but which falls short of the insured's total damages, the insured may seek compensation from [PLIGA]." Id. at 211, 901 A.2d 303.
We are completely satisfied that PLIGA is not entitled to any credit based on the amount paid by the workers' compensation carrier here. It is of no moment that the UM policy limit of his insurance was less than the workers' compensation lien because that lien is not a "covered claim."
Reversed and remanded for entry of an order compelling PLIGA to pay $300,000 to plaintiff.
NOTES
[1] Redland Insurance Company was sued as "Redland Transportation." The record on appeal does not disclose the nature of its relationship with Acceleration National Insurance Company.
[2] Plaintiff's claims against Acceleration were apparently dismissed sometime prior to April 29, 2004, when his action against PLIGA was restored. Presumably, the action against Acceleration was dismissed when it was declared insolvent. Acceleration has not participated in this appeal.
[3] Because the Guaranty Act was amended after this accident, language quoted from the Guaranty Act is language that was in effect prior to December 2004. L. 2004, c. 175 § 1-9.
[4] Other exceptions to the definition of "covered claim" contained in N.J.S.A. 17:30A-5 are not applicable here and have been deleted from the definition.
[5] That statute provided in pertinent part at that time as follows:

Priority of Claims
. . . .
b. Any person having a claim against an insurer, whether or not the insurer is a member insurer, under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his right under that other policy. An amount payable on a covered claim under [this Act] shall be reduced by the amount of recovery under any such insurance policy.
[N.J.S.A. 17:30A-12.]
This provision was amended in 2004 but the amendments did not affect the Thomsen appeal. Thomsen, supra, 187 N.J. at 205-06 n. 3, 901 A.2d 303.